UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

Case No. 25-cr-20206
Hon. Linda V. Parker

TIMOTHY PATRICK HIGLE,

Defendant.
_________________________________/

**UNITED STATES' SENTENCING MEMORANDUM**

For most of his adult life, Timothy Patrick Higle preyed upon teenage girls to solicit nude images and sex. To accomplish this, Higle seemingly put himself in positions around children he could exploit later. Higle used money, drugs, alcohol, and extortion to get what he wanted from his victims. His conduct spanned more than a decade with more than a dozen identified victims. He inflicted countless mental and emotional harms on his victims without regard to their wellbeing. In some cases, Higle continued to harass victims on social media even after they blocked him or broke contact. As such, the United States requests that the Court sentence Higle to a guideline sentence of 600 months' imprisonment.

## I. Facts and Procedural History

Michigan State Police (MSP) started investigating Higle two years ago after Minor Victim-2 (MV-2) reported that Higle had solicited her for child sexual abuse material (CSAM) and sex when she was 15 years old. PSR ¶ 10. Higle used

Snapchat and sent money and MV-2 began sending "too many [images] to count" when she was 16. *Id.* Higle repeatedly asked for sex, which MV-2 refused. *Id.* Higle sent MV-2 pictures of his erect penis and of him masturbating. *Id.* MV-2 knew several other girls who had similar interactions with Higle, including Minor Victim-1 (MV-1). *Id.* ¶ 11. MV-1 sent Higle numerous fully nude photos of herself starting in 2022 when she was 13 and continued through 2024. *Id.* Higle also made detailed requests for what images he wanted to see and paid MV-1 and MV-2 to take nude photos together. *Id.* ¶ 12. Higle propositioned both MV-1 and MV-2 for sex, which they refused. *Id.* Higle's Apple iCloud account contained CSAM images sent in 2023 and 2024, when MV-1 was between 14 and 15 years old and MV-2 was 16 years old. *Id.* Review of Higle's financial and iCloud records confirmed the payments and revealed more victims. *Id.* ¶ 13.

Minor Victims -3, -4, -5, and -6 reported similar conduct to MSP—that Higle used snapchat to solicit them for nude images and videos in exchange for money, he provided specific details on content he wanted, and that he solicited them for paid sex. PSR ¶¶ 14-17. Higle approached these victims while they were in middle and high school, and they ranged from approximately 14 to 17 years old at the time they sent images to Higle. *Id.* For Minor Victims -5 and -6, Higle offered as much as $500 for sex. *Id.* ¶¶ 16-17. In one instance, Higle offered Minor Victim-5 a vape pen cartridge containing THC/marijuana. *Id.* ¶ 16. For each of

these victims, investigators located anywhere from a handful of videos to dozens of videos and images. *Id.* ¶¶ 10-17. From 2022 to 2024, Higle was in his early 30s when he solicited images from MV-1 through MV-6.

Higle's offense conduct, however, began as early as 2012 and continued the rest of the decade. Minor Victim-8 (MV-8) reported that she sent nude images to the defendant in early 2012 when she was around 14 to 15 years old and Higle was around 20 years old. PSR ¶ 18. Higle provided MV-8 with diet pills in exchange for oral sex. *Id.* Higle threatened to expose MV-8's nude photos online if she did not send him more photos or continue to provide oral sex. *Id.*

Minor Victim-7 (MV-7) (stipulated offense) met Higle when she was 12 years old and began sending nude images and videos to him when she was 15 in the mid-2010s. PSR ¶ 19. In Higle's iCloud account, investigators found images that Higle took of MV-7 performing oral sex on him when she was 17 years old. *Id.* MV-7 also reported that she engaged in sex acts with Higle before she turned 16, and that Higle paid her $500 for a specific sex act before she turned 18. *Id.*

In addition, MSP identified and interviewed more victims of Higle's pervasive conduct beyond the charged counts and stipulated offense in this case. *See* PSR ¶ 20. Minor Victim-10 (MV-10) was in the 8th grade when Higle added her on Snapchat where he progressed to asking for risqué photos, offering MV-10 $20 to take her pants off for a photo, and $50 for a photo in just a bra. MSP Report

Excerpt, Gov't Ex. 1 at 221 (Under seal). Higle sent money for images of MV-10's body and outfits and he asked MV-10 multiple times to meet up in his car. *Id.* MV-10 recalled sending Higle photos with her breasts exposed and in underwear. *Id.* MV-10 tried to break contact with Higle, but he continued to ask for photos, contacting her on numerous social media platforms before she blocked him on everything. *Id.* at 221-222.

Minor Victim-11 (MV-11) reported that Higle sexually assaulted her and that she sent him nude images while she was a minor. MSP Report Excerpt, Gov't Ex. 2 at 233 (Under seal). MV-11 met Higle in 2012 when she was 14 years old and Higle was 20. *Id.* at 234. MV-11 provided Higle with nude photos via Snapchat of her exposed chest, possibly her buttocks, and she also reported video chatting with Higle while she masturbated, which he requested a lot. *Id.* at 235. MV-11 described a sexual assault in which Higle got her "really drunk" beforehand and that alcohol was a big factor into how Higle manipulated her. *Id.* at 234, 236. After MV-11 stopped communicating with Higle, Higle continued to contact her, telling her that he would show up in person, threatening to "post her nudes," and he tried sending money, all to get MV-11 to talk to him. *Id.* at 236.

Minor Victim-13 (MV-13) advised that she met Higle when she was approximately 15 years old and that Higle reached out to her in "creepy ways," including by repeatedly asking MV-13 and her friend for nude photos in exchange

for money or alcohol. MSP Report Excerpt, Gov't Ex. 3 at 402 (Under seal). MV-13 and her friend sent Higle photos of random girls they found on the internet, and Higle became upset when he found out the true origin of the photos. *Id.* at 403. In one instance, Higle propositioned MV-13 for sex after she turned 18, and in a text message to MV-13, stated "$1,000 max. But that'd be for services." *Id.* at 404-405.

Finally, a late 2019/early 2020 investigation by a local police department identified more victims of Higle's conduct in the late 2010s. Minor Victim-9 (MV-9) reported that she was 16 years old when Higle befriended her, that they primarily talked on Snapchat, which eventually progressed to Higle asking for nude photos. Police Report Excerpt, Gov't Ex. 4 at 281 (Under seal). MV-9 initially refused but later agreed to send a nude photo. *Id.* Higle persisted in asking for more photos, and MV-9 eventually gave in to Higle's demands. *Id.* At some point, Higle threatened to publicly post MV-9's nude photos online after she declined to send more. *Id.*

Similarly, Minor Victim-14 (MV-14) told police that she met Higle when she was in 9th grade and that Higle messaged her on Snapchat. Gov't Ex. 4 at 282. Higle turned "creepy" as he began asking MV-14 for nude photos. *Id.* MV-14 refused and blocked him on Snapchat. *Id.* Higle later somehow found MV-14's phone number and started text messaging her until she blocked him again. *Id.*

Likewise, Minor Victim-12 (MV-12) met Higle her senior year of high school in 2017 and they communicated on Snapchat where she sent approximately 10 fully exposed nude images to Higle. MSP Report Excerpt, Gov't Ex. 5 at 247 (Under seal). After they started communicating, Higle commented on how long it was until MV-12's 18th birthday and he made other inappropriate remarks. *Id.* at 248. Higle persistently asked MV-12 to pick her up and have sex with her, which MV-12 refused, causing Higle to become increasingly agitated. *Id.* MV-12 eventually agreed to send nude images to calm Higle down, but MV-12 reported that Higle remained angry about MV-12 refusing to meet up with him. *Id.* Higle offered to send MV-12 nude images of himself, but MV-12 declined. *Id.* at 249. MV-12 reported Higle to the local police department and participated in an administrative investigation that ultimately impacted Higle's career. *Id.* at 249-250.

Based on this and other information, the FBI arrested the defendant via criminal complaint in February 2025. The grand jury returned an eight-count Indictment, charging Higle with seven counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) related to MV-1 through MV-7, and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Higle later waived indictment and agreed to proceed by a nine-count Superseding Information, which added one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). ECF No. 29. Pursuant to a Rule 11 Plea Agreement,

Higle pleaded guilty to one count of sexual exploitation of children (Count 3) and receipt of child pornography (Count 8). ECF No. 31.

## II. The Court Should Sentence the Defendant Within the Guideline Range

Congress provided in 18 U.S.C. § 3553(a) the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors to the defendant's case establish that a guideline sentence would be "sufficient, but not greater than necessary, to comply with the purposes of" sentencing set forth in section 3553(a). *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

### A. Sentencing Guidelines Range

The Probation Department calculated the defendant's sentencing guideline range as 600 months based on offense level 43 and criminal history category I. PSR ¶ 100. The guidelines are calculated as life imprisonment, but restricted based

on the maximum statutorily authorized sentence. *Id.* The government concurs in the calculation.

### B. Nature And Circumstances of the Offense and History and Characteristics of the Offender

Higle's campaign of sexual exploitation of children lasted for more than a decade as he recklessly and callously solicited nude photos and videos from victim after victim. Higle befriended his victims, groomed them, and then exploited them. He offered money, drugs, and alcohol for the graphic images he wanted to see, even offering to pay these children for sex. In doing so, Higle committed one of the most serious and offensive crimes acknowledged by the law by using minors to produce CSAM for his own consumption. Higle's actions are likely to leave lasting impacts on the mental and emotional health of his many victims.

Additionally, the defendant's history and characteristics do not mitigate his crime, nor do they mitigate to a below guideline sentence. Higle had supportive family relationships growing up, he was raised free of abuse, he is educated, and he has a solid employment history. PSR ¶¶ 68-92. He denied having any history of mental or emotional health issues. *Id.* ¶ 76. And his only criminal history is a misdemeanor stalking conviction that relates to harassing conduct towards one of the minor victims. *Id.* ¶ 61. But Higle's history on paper fails to fully capture a much darker history with a sexual interest in children and the prolific nature of his offenses. On balance, these factors weigh in favor of a guideline sentence.

**C. Seriousness of the Offense, Promoting Respect For Law, and Providing Just Punishment**

As evinced by the 15-year mandatory minimum and the 600 months guideline range, Higle committed one of the most serious offenses under federal law by producing child pornography. And Higle's receipt of child pornography conviction is serious enough that it carries a five-year mandatory minimum. These facts alone justify a guideline sentence, but the breadth of Higle's conduct—with more than a dozen victims—readily establishes the need for a guideline sentence to recognize the seriousness of the offense, promote respect for the law, and provide just punishment.

**D. Deterrence and Protection of the Public**

A guideline sentence in this case will afford adequate deterrence and protect the public from dangerous sexual predators, like Higle, who seek to assault and exploit children, particularly those of vulnerable age. Higle was seemingly not deterred from continuing to exploit children even after the misdemeanor stalking case and despite his knowledge about reports of his misconduct. Nor was Higle deterred from exploiting his victims even after they tried to block him or break contact. Several of his victims reported the same Higle playbook, that he would find their cell phone number or social media accounts where he would continue to harass and threaten them. Such pervasive and obsessive conduct has no place in

our society. A guideline sentence is necessary to deter the defendant from future conduct, as well as protect the public from him.

## Conclusion

For the reasons stated above, the government asks the Court to accept the parties' Rule 11 plea agreement and impose a guideline sentence of imprisonment.

Respectfully Submitted,

JEROME F. GORGON JR.
United States Attorney

*s/ Sean L. King*
SEAN L. KING
Assistant United States Attorney
211 W. Fort. St., Suite 2001
Detroit, Michigan 48226
(313) 226-9727
sean.king@usdoj.gov

Dated: August 31, 2026